**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1387-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

I-NOW RAINEY,

    Defendant-Appellant.

_____

> Submitted April 1, 2025 – Decided July 21, 2025
>
> Before Judges Susswein and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-03-0547.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).
>
> Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant I-Now Rainey appeals from the December 1, 2023 Law Division order issued by Judge Rochelle Gizinski denying his petition for post-conviction relief (PCR) without an evidentiary hearing.  In 2018, defendant was convicted by a jury of armed robbery, aggravated assault, burglary and firearms and drug offenses.  Defendant contends in his PCR petition that he received ineffective assistance of counsel because his trial attorney failed to object to the trial testimony of a police lieutenant regarding the State's use of codefendants' cooperation testimony.  Although we deemed the lieutenant's comments to be improper and objectionable, we concluded they were not capable of producing an unjust result.  After considering the record in light of the parties' present arguments and the governing legal principles, we affirm the denial of PCR without a hearing substantially for the reasons set forth in Judge Gizinski's written opinion.

I.

We presume the parties are familiar with the pertinent facts and procedural history leading to this appeal, which are thoroughly recounted in our prior opinion rejecting defendant's arguments on direct appeal.  See State v. Rainey, No. A-0623-18 (App. Div. Mar. 26, 2021) (slip op. at 2-11).  We need not repeat that information except to focus on the trial testimony that defendant argues his

A-1387-23

counsel should have objected to. As we explained in our prior opinion, two former codefendants, Earl Snyder and Tylee Handley, testified for the State in exchange for reduced sentences. Id. at 10. Monmouth County Prosecutors Office Lieutenant Scott Samis at trial offered an "explanation of the purpose and mechanics of a 'proffer agreement.'" Id. at 14. Samis testified:

> A proffer is where an attorney and their client who is the defendant come into the prosecutor's office with the prosecutor who is running the case and we call it—it[ is] like a queen of the day letter. They have rights. They[ are] able to sign the form, which technically . . . protects their rights. So, they[ are] able to talk about any crime committed and we[ are] not going to go out and arrest them or investigate. The only time we could do that, is if they took the stand and they lied about it. So, specifically it protects them. And what we want them to do in the session is talk about crimes. Talk about what took place. Give us the information that we need to prosecute and put cases together, and again, it gives them eventually consideration for the charges later on.
>
> [Ibid.]

The following direct examination colloquy between the prosecutor and Sami ensued:

> [Prosecutor:] . . . [W]hy would members of law enforcement want to sit down with these people who have either done bad things or know about bad things and tell them, you can just have a free pass for the day, do[ not] worry about it, and you just tell us what [we] . . . want to know. I mean, you[ are] the police right?

3

[Samis:]  We are.

[Prosecutor:]  Should[] you [not] be arresting people if they[ are] telling you bad stuff?

[Samis:]  This is a great tool for law enforcement, especially investigations.  <u>We need bad to get bad.</u> <u>Sometimes you have to make deals with bad people to</u> <u>get the worst people</u>.  And in these cases, we[ are] able to get some people inside who have done these bad things and they[ are] able to provide us information that we[ are] able to solve cases and certainly make great cases better, because of their cooperation and knowledge that we do[ no]t have.

[(Emphasis added).]

Near the close of the prosecutor's direct examination, Samis testified:

. . . [A]gain, <u>you need bad guys to get bad guys</u>.  <u>You</u> <u>need the worst to get the worst</u>.  When you make these offers and we stick by them, later on some of these guys get out and some of them again get into trouble.  So, if we stick by our word and we[ are] doing the right thing by them and you could get a case again, you[ are] hopeful that you can work another case out or you can solve another crime because they know we stick to what[ is] doing right.

. . .  These guys came forward and took the responsibility.  They testified.  They told the truth, I hope, and . . . they deserve that cooperation . . . .

[(Emphasis added).]

When asked whether he knew "anything about what the testimony was," Samis responded that he had "no idea."

4

On direct appeal, defendant argued that he was denied due process and a fair trial on several grounds, including Samis' testimony. We affirmed his convictions and sentence. With respect to the lieutenant's testimony, we commented, "[w]e agree that certain aspects of the lieutenant's testimony were problematic. Had there been a timely objection, a curative instruction would have been appropriate." Rainey, slip op. at 16. We added, "in this instance, 'failure to "interpose a timely objection constitutes strong evidence that" [the challenged testimony] was actually of no moment.'" Ibid. (alteration in original) (citing State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003) (quoting State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999))).

We further explained:

> We believe the lieutenant's explanation of the proffer agreement process actually supported the defense trial strategy, which sought to paint Handley and Snyder as untrustworthy criminals who falsely implicated defendant in exchange for a reduction in their own prison sentences. We add that Lieutenant Samis's testimony regarding "the worst people," while objectionable, was not impermissible "other crimes" evidence as defendant now suggests. The lieutenant did not expressly or impliedly inform the jury that defendant had committed a crime or bad act other than the ones for which he was being tried.
>
> [Id. at 17 (footnote omitted).]

5

The record shows, following our affirmance, defendant did not seek certification to the Supreme Court. On March 10, 2023, defendant filed a self-represented PCR petition, which PCR counsel thereafter supplemented. Defendant argued inter alia[1] that his trial counsel rendered ineffective assistance of counsel by failing to object to Samis' testimony "when he discussed the proffer statement." In denying defendant's PCR petition, Judge Gizinski found that "[n]o facts ha[d] been presented to this [c]ourt that would indicate the jury interpreted [Lieutenant] Samis' statement as referring to [d]efendant, that [d]efendant was in fact prejudiced in some way by [his] testimony, or that a curative instruction, even if provided . . . , would have affected the outcome of [d]efendant's trial." Further, the PCR judge found that she was "in no position to reject the [a]ppellate [c]ourt's determination that the decisions of trial counsel were tactical in nature and of sound trial strategy," especially "[c]onsidering the [a]ppellate [c]ourt reviewed the trial transcript and analyzed appellate briefs and oral argument, and since no additional facts ha[d] been presented at this time."

---

[1] We need not discuss other claims of ineffective assistance that self-represented raised in his petition but are not raised in the present appeal. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citations omitted) ("An issue not briefed on appeal is deemed waived."); State v. Rochat, 470 N.J. Super. 392, 456 (App. Div. 2022).

Specifically, the PCR judge cited the portion of our prior opinion that expressed our "belie[f] [that] the lieutenant's explanation of the proffer agreement process actually supported the defense trial strategy, which sought to paint Handley and Snyder as untrustworthy criminals who falsely implicated defendant in exchange for a reduction in their own prison sentences."  See Rainey, slip op. at 17.  Accordingly, Judge Gizinski concluded that "defendant was not able to overcome the presumption that trial counsel's decision was based on sound trial strategy."

Defendant raises the following contention for our consideration:

> TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE TESTIMONY OF LIEUTENANT SAMIS AS TO THE STATE'S UTILIZATION OF CODEFENDANT TESTIMONY.

II.

PCR serves the same function as a federal writ of habeas corpus.  State v. Preciose, 129 N.J. 451, 459 (1992).  When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief.  Ibid.  To meet this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision."  State v. Mitchell, 126 N.J. 565, 579 (1992).

7

In addressing an ineffective assistance of counsel claim, New Jersey courts follow the two-part test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (quoting Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689).

The second Strickland prong requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors

A-1387-23

must create "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. This "is an exacting standard." Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. Ibid. (citing Fritz, 105 N.J. at 52).

When a PCR court does not hold an evidentiary hearing, our standard of review is de novo as to both the factual inferences drawn by the trial court from the record and the court's legal conclusions. State v. Walker, 478 N.J. Super. 553, 560 (App. Div. 2024). In applying such de novo review, we "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

That said, a PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A defendant "must do more than make bald assertions that [the defendant] was denied the effective assistance of counsel. [A defendant] must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Porter, 216 N.J. 343, 355 (2013) (quoting Cummings, 321 N.J. Super. at 170). Further, "[i]f the [PCR] court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . .

then an evidentiary hearing need not be granted." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (quoting Marshall, 148 N.J. at 158).

### III.

On direct appeal, defendant argued that he was "denied due process and a fair trial" when the State elicited testimony from Lieutenant Samis that "the State engage[d] in proffer sessions to make deals with 'bad' people." Rainey, slip op. at 11. Previously adjudicated PCR claims, it bears emphasizing, are procedurally barred. R. 3:22-5. "A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule . . . or in any appeal taken from such proceedings." Ibid. A PCR petition "is not a substitute for direct appeal; nor is it an opportunity to relitigate a case on the merits." State v. Szemple, 247 N.J. 82, 97 (2021); see also Preciose, 129 N.J. at 459. Further, a PCR claim is barred "if the issue raised is identical or substantially equivalent" to an issue adjudicated previously on direct appeal. State v. Afanador, 151 N.J. 41, 51 (1997) (italicization omitted) (quoting State v. McQuaid, 147 N.J. 464, 484 (1997)).

But even if we were to disregard the procedural bar and address defendant's present contention on its merits, we are unpersuaded that he was

unjustly convicted by reason of his trial attorney's failure to object to Samis' comments. As Judge Gizinski aptly noted, defendant offers no evidence to overcome the presumption that his trial counsel's failure to object at trial was not "sound trial strategy." The gravamen of defendant's argument before us is that an "evidentiary hearing should be conducted at which trial counsel would be called to testify whether his failure to object to Samis'[] testimony was the result of trial strategy or negligence on his part." We consider defendant's contention that "[t]here was no legitimate strategic reason to fail to object to such highly prejudicial testimony which could have only been detrimental to [defendant], as opposed to supporting his theory of the case" to be tantamount to a "bald assertion," see Cummings, 321 N.J. Super. at 170—one contrary to the rationale in our prior opinion.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division